IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THOMAS PENNAVARIA,**

   **Petitioner,**

v.                  Civil Action No. 5:07cv29
                       (Judge Stamp)

**DOMINIC A. GUTIERREZ, Sr., Warden,**

   **Respondent.**

## REPORT AND RECOMMENDATION

   Petitioner initiated this case on February 23, 2007, by filing an Application for Habeas Corpus pursuant to 28 U.S.C. § 2241 in which he seeks an order directing the Bureau of Prisons ("BOP") to immediately transfer him to home confinement in Salt Lake City, Utah and award him a minimum of 30 days extra good time credit up to 180 days to be deducted from his sentence. On March 2, 2007, petitioner paid the required $5.00 filing fee. On March 5, 2007, the undersigned made a preliminary review of the file and determined that summary dismissal was not warranted at that time. Consequently, the respondent was directed to file an answer. On March 19, 2007, the petitioner filed an Amendment to Pleadings Pursuant to Civ. Proc. R. 15(c)(2). On April 4, 2007, the respondent filed his Response to Show Cause Order and Motion To Dismiss. On April 5, 2007, a Roseboro Notice was issued. On April 23, 2007, the petitioner filed objections to the Motion to Dismiss.[1]

---

[1] On July 17, 2007, the petitioner filed a Motion for Leave to submit additional evidence and supplement his petition with evidence from the sentencing court in the Eastern District of Pennsylvania. (Doc. 13). The purpose of the petitioner's motion was to lend credence to his request that this Court correct his sentence from 72 months to 60 months and order the BOP to honor the sentencing judge's transfer recommendation to the satellite Camp in Atwater,

This matter is pending before the undersigned for a Report and Recommendation pursuant to LR PL P 83.09, et seq.

## I. Facts

In 2002, the petitioner was indicted in the United States District Court for the Eastern District of Pennsylvania along with 36 co-defendants in a 135-count indictment. The petitioner was charged in count 90 with conspiracy to launder money in violation of 18 U.S.C. § 1956(h), and in counts 91-109 with substantive money laundering in violation of 18 U.S.C. § 1956(a)(1)(b). On April 14, 2004, the petitioner pleaded guilty to those charges. On August 5, 2004, the petitioner was sentenced to 46 months in prison, three years supervised release, a fine of $10,000 and a special assessment of $2,000. The petitioner began serving his sentence on that same day. (See Docket Sheet from 2:02-cr-172-SD-28).

The government appealed the sentence, and the Third Circuit reversed in light of United States v. Booker, 543 U.S. 220 (2005). (See United States v. Pennavaria, 445 F.3d 720 (3rd Cir. 2006). The case was then remanded for re-sentencing under the now 'advisory" guidelines. The petitioner filed a petition for writ of certiorai, which was denied. (See Pennavaria v. United States, 127 S. Ct. 531 (Oct. 30, 2006)).

Re-sentencing took place before the United States District Court for the Eastern District of Pennsylvania on January 11, 2007. The Court imposed a sentence of 60 months in custody to "run concurrently with the sentence of one year and a day which was imposed in Criminal No. 99-43 in the Western District of Pennsylvania on November 22, 2004 by the Honorable Gary L. Lancaster.

---

California. On August 28, 2007, the petitioner filed a Memorandum of Judicial Notice in which the petitioner advised this Court that the sentencing judge had corrected his sentence to 60 months and that he had been informed that the paper work to transfer him to the Prison camp in Atwater, California would commence. Accordingly, petitioner's motion (doc. 13) has been denied as moot.

(See 2:02-cr-172-SD-28, Doc. 1992).

Because of the Bureau of Prisons' Policy regarding time calculation, the BOP would not run the petitioner's two sentences concurrently, and instead, ran them consecutively. Apparently, when re-sentencing takes place without a re-trial, the sentence is still computed as running from the date of the first sentence so that the defendant will get full credit for all of that time in custody. The time runs from the date of the second sentencing only if there is a re-trial. Therefore, the BOP viewed the year and a day sentence imposed by the United States District Court for the Western District of Pennsylvania as coming last, and because that sentencing order directed that the two sentences were to run consecutively, the BOP ran them consecutively. Accordingly, a Consent Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 was filed by the petitioner on August 21, 2007. (2-02-cr-172-SD-28, Doc. 2068).

On August 22, 2007, the United States District Court for the Eastern District of Pennsylvania granted the petitioner's motion after having been notified that the Government had no objection to the motion. The term of imprisonment specified in the amended judgment of January 11, 2007 was amended to read 48 months. 2-02cr-172-SD-28, Doc. 2069). The net result of this order was to cause the petitioner's total term of incarceration for his convictions in the Eastern District and Western District of Pennsylvania to be 60 months.

The petitioner is currently incarcerated at FCI Morgantown. According to the information provided on the BOP inmate locator, the petitioner's projected full term release date is December 10, 2008. In addition, the petitioner has been given a CCC eligibility placement date of June 10, 2008. (Doc. 15, p.1).

## II. Contentions of the Parties

Petitioner raises the following "grounds" in his Application for Habeas Corpus:

(1) Due to his wife's severe depression, medical condition, and financial difficulties, coupled with his own medical problems and age, the petitioner should be transferred to home confinement in Salt Lake City, Utah.

(2) Lump Sum Extra Good Time Award should be deducted from his sentence in consideration of the heroic deed he performed in saving another inmate's life.

The Government contends that the petition should be dismissed because:

(1) The petitioner failed to exhaust his administrative remedies;

(2) Petitioner has no right to serve his prison sentence on home confinement; and

(3) Petitioner is barred from receiving extra good conduct time.

### III. Standard of Review

#### A. Motion to Dismiss

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

### IV. Analysis

#### A. Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

4

available are exhausted." 42 U.S.C. § 1997(e). The principles of exhaustion have also been applied to habeas suits involving the duration of confinement. See, e.g., Asare v. U.S. Parole Comm'n, 2 F.3d 540, 544 (4th Cir. 1993) ("If Asare is dissatisfied by the release date established by the Bureau of Prisons, she can exhaust the administrative remedies that may be available, and, if she remains dissatisfied, she can apply to a United States district court for a writ of habeas corpus, which ultimately can be appealed to a court of appeals,"); Miller v. Clark, 958 F.2d 368, 1992 WL 48031 (4th Cir., March 16, 1992) (and cases cited therein) ("Federal prisoners who wish to challenge the length of their confinement must first exhaust administrative remedies.").

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9), followed by an appeal to the regional director of the Federal Prisons (BP-10). Finally, if the prisoner has received no satisfaction, he may appeal to the Office of the General Counsel (BP-11). 28 C.F.R. § 542.10-542.15.

In the case at hand, the petitioner asserted that the facts raised in his petition had been presented in the prison's internal grievance procedure, and that his requests were denied. (Doc. 1, p. 6). However, the respondent asserts that the petitioner did not exhaust his administrative remedies, and in support of this claim, the respondent has submitted the affidavit of Alecia D. Sankey, a Paralegal Specialist and the Administrative Remedy clerk at the Mid-Atlantic Regional Office of the Bureau of Prisons. (Doc. 9-3, pp. 1-3). Attached to the Affidavit is a copy of the Administrative Remedy Generalized Retrieval form related to the Administrative Remedies filed by the petitioner. The printout demonstrates that the petitioner has made four administrative remedy submissions to the BOP. Only one is relevant to this case. On November 21, 2006, the petitioner filed an administrative remedy at FCI Morgantown concerning his request for extra good time for

an act of heroism. It was assigned Remedy ID No. 434274-F1 and was rejected as untimely as the act in question occurred on October 23, 2004, more than two years earlier and well beyond the twenty day limit for filing administrative remedies. Therefore, that claim was not administratively exhausted. In addition, according to the affidavit, the petitioner has never filed an administrative remedy regarding his request for home confinement. (Doc. 9-3, p.3).

In response to the argument that he did not exhaust his administrative remedies, the petitioner alleges that any further attempt to exhaust his administrative remedies would be futile. Therefore, citing Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), the petitioner argues that his petition should not be dismissed for failure to exhaust, and this Court should grant the relief requested therein.

The undersigned notes that federal inmates generally are required to exhaust their administrative remedies prior to filing a § 2241 petition. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996); Colton v. Ashcroft, 299 F.Supp. 2d 681 (E.D. Ky (2004). However, a number of courts have found that requiring inmates to challenge the BOP's policy regarding placement in a CCC through the administrative process would be futile. See, e.g., Fagiolo v. Smith, 326 F. Supp.2d 589, 590 (M.D. Pa. 2004)("exhaustion would be futile because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c); Zucker v. Meinfee, 2004 WL 102779 (S.D.N.Y. Jan 21, 2004)("[G]iven the subordinate relation of the highest level of administrative appeal to the source of the interpretation at issue in this case" the petitioner's failure to exhaust was excused as being futile). This was also the holding in Woodall, supra.

Furthermore, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions

6

arising under § 2241 are merely judicially imposed. For this reasons, it follows that a Court has the discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions). Here, as set forth below, the petitioner is not entitled to the relief he has requested. Therefore, this court need not determine whether the exhaustion requirement should be waived.

**B. HOME CONFINEMENT**

The petitioner is requesting that this Court order the BOP to place him on home confinement in Salt Lake City, Utah. In support of his request, the petitioner points to 18 U.S.C. § 3621(b) which states that:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and

> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

The petitioner argues that this section authorizes the BOP to transfer a prisoner to home confinement or half-way house at any time, and that consideration of the factors outlined therein mandate his immediate transfer to home confinement.

First, the undersigned notes that Congress has delegated to the BOP the exclusive authority to place a prisoner on pre-release home confinement, but for no more than the last 10% of the inmate's sentence, not to exceed six months. See 18 U.S.C. § 3624(c). In this case, the petitioner's projected full release date is December 10, 2008, and he already has been given a CCC eligibility placement date of June 10, 2008, the maximum six months to which he is entitled.

It is well established that a prisoner does not possess a protected liberty interest in serving his or her term of imprisonment in a particular institution or program, whether it be in a prison or on home confinement. See Meachum v. Fano, 427 U.S. 215 (1976). Furthermore, federal prisoners do not have a protected liberty interest in being placed on home confinement, and the BOP has complete and absolute discretion regarding where a prisoner is to be held in pre-release confinement. Brown v. Gross, 1996 WL 218345 (10th Cir. 1996). The incarceration, classification and transfer of federal prisoners falls within the broad discretion of the BOP, and a Court lacks the authority to order that a prisoner be confined to any particular institution. "[T]hose decisions are within the discretion of the Bureau of Prisons." United states v. Williams, 65 F.3d 301, 307 (2d Cir. 1995); see also United States v. Restropo, 999 F.2d 640, 645 (2d Cir. 1993) ("The Bureau is given a great deal of flexibility with respect to the assignment of any prisoner to a correctional facility."); Leibowitz v. United States, 729 F. Supp. 556. 561 (E.D. Mich 1989) aff'd, 914 F.2n 256 (6th Cir.

1990) ("The Bureau of Prisons enjoys almost absolute discretion over assignment, transfer, and conditions of confinement.'). Therefore, the BOP has the discretion whether the petitioner's last six months will be spent in a CCC or on home confinement, and this Court lacks both the authority to direct the BOP to select one or the other or to order such placement immediately.

## C. EXTRA GOOD CONDUCT TIME

In addition to an order that he be transferred to home confinement, the petitioner also seeks a lump sum award for extra good conduct time. In support of this request, the petitioner notes that on October 23, 2004, while at FCI Loretto, he saved the life of another inmate who was undergoing cardiac distress. The petitioner than cites 28 C.F.R. § 523.10 which provides as follows:

> (a) the Bureau of Prisons awards extra good time credit for performing exceptionally meritorious service, or for performing duties of outstanding importance or for employment in an industry or camp. An inmate may earn only one type of extra good time (e.g., an inmate earning industrial or camp good time is not eligible for meritorious good time), except that a lump sum award as provided in § 523.16$^2$ may be given in addition to another extra good time award.

While the petitioner's actions in saving the life of another inmate, might be the type of conduct contemplated by 28 C.F.R. §§ 523.10, 523.16, those sections were repealed on October 12, 1984, effective November 1, 1987. Norris v. White, 825 F.2d 21, n. 1 (4th Cir. 1987). Therefore, it only applies to the sentences of individuals whose offenses occurred before November 1, 1987. U.S. v. Moore, 1993 WL 211305, n. 2 (4th Cir. 1993).

---

$^2$28 C.F.R. § 523.16 provides in part that: "[a]ny staff member may recommend to the Warden the approval of an inmate for a lump sum award of extra good time. Such recommendations may be for an exceptional act or service that is not part of a regularly assigned duty. The warden may make lump sum awards of extra good time not to exceed thirty days. If the recommendation is for an award in excess of thirty days and the Warden concurs, the Warden shall refer the recommendation to the Regional Director who may approve the award.

9

Furthermore, title 18 U.S.C. § 4162 provides that "in the discretion of the Attorney General such allowance may also be made to a prisoner performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations." This statute also was repealed effective November 1, 1987. Moss v. Clark, 886 F.2d 686, n.3 (4th Cir. 1989). Furthermore, even while in effect, "[t]he provisions of this rule [did] not apply to inmates sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act of 1984. This means that inmates sentenced under the Sentencing reform Act provisions for offenses committed on or after November 1, 1987 are no eligible for either statutory or extra good time, but may be considered for a maximum of 54 days of good conduct time credit per year." 28 C.F.R. § 523.10(b).

The offenses for which petitioner is now incarcerated occurred after November 1, 1987. Therefore, he is not entitled to any extra good conduct time under either 28 C.F.R. §§ 523.10, 523.16 or 18 U.S.C. § 4205(g). He is only entitled to 54 days of good conduct time credit per year.

**D. Compassionate Release**

As a final basis for requesting that his petition be granted, the petitioner cites 18 U.S.C. §3582(c)(10(a) which provides as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that–
> **(1)** in any case--
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> **(I)** extraordinary and compelling reasons warrant such a reduction; or
> **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section

> 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

While the undersigned is sympathetic regarding the alleged illness of the petitioner, and his wife, the fact remains that the Court has no jurisdiction to grant a compassionate release because the Director of the Bureau of Prisons has not made such a request. Thus, the petitioner is not entitled to any habeas relief regarding his quest for a compassionate release. See United States v. McCann, 2003 WL 2002776 (W.D. Va. 2003)(the court can not modify the defendant's sentence because of the illness of his daughter because the Director of the Bureau of Prisons had not made a motion for modification); see also, Engle v. United States, 26 Fed. Appx. 394, 2001 WL 1356205 (6th Cir. 2001)(unpublished)("A district court may not modify a defendant's federal sentence based on the defendant's ill health except upon a motion from the Director of the Bureau of Prisons").

## V. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (Doc. 9) be **GRANTED**, and the petitioner's §2241 petition be **DISMISSED**.

Within ten (10) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);

Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. In addition, the clerk shall provide a copy to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: November 28, 2007.

       /s/ James E. Seibert
      JAMES E. SEIBERT
      UNITED STATES MAGISTRATE JUDGE